(No. 94479.—■)

*In re* D.F. *et al.*, Minors (The People of the State of Illinois, Appellee, v. Lashawn F., Appellant.)

*Opinion filed December 18, 2003.*

224

FREEMAN, J., joined by McMORROW, C.J., specially concurring.

Rita A. Fry and Edwin A. Burnette, Public Defenders, of Chicago (Karen Margaret Florek, Assistant Public Defender, of counsel), for appellant.

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee Goldfarb, Nancy Grauer Kisicki and Peter Maltese, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Charles P. Golbert and Kass A. Plain, of the Office of the Cook County Public Guardian, of Chicago (Amy Halbrook, law student), for appellee minors.

JUSTICE FITZGERALD delivered the opinion of the court:

In this appeal we must determine the proper time frame during which a parent's conduct will be assessed for purposes of deciding whether that parent is "unfit," under the grounds set forth in section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2000)). The appellate court determined that the proper time frame is the nine-month period following the trial court's adjudication of neglect, abuse, or dependency, and upheld the trial court's finding of unfitness. 332 Ill. App. 3d 112. For the reasons discussed below, we affirm.

## BACKGROUND

Respondent, Lashawn F., is the mother of two children born July 25, 1992, and March 27, 1994. A telephone call to the child abuse hot line in September 1994 brought the family to the attention of the Department of Children and Family Services (DCFS). Following investigation, in January 1995, DCFS took temporary custody of the children, and the State filed a petition for adjudication of wardship in the Cook County circuit court. At the adjudicatory hearing on June 16, 1995, the circuit court entered a finding that the children were abused and neglected. The court noted that both children tested positive for cocaine at birth and that respondent's drug use and mental condition created an injurious environment and substantial risk of harm to the children. At the dispositional hearing on February 14, 1996, the circuit court adjudged the children wards of the court and placed guardianship in DCFS. The children were subsequently placed in foster care with a relative of respondent.

On November 1, 1999, the State filed a supplemental petition for appointment of a guardian with right to consent to adoption, *i.e.*, a petition to terminate respondent's parental rights. At the time the petition was filed, respondent had recently begun serving a three-year sentence in the Illinois Department of Corrections for possession of a stolen vehicle. A hearing to determine whether respondent was an unfit parent under the various grounds alleged by the State commenced August 18, 2000. Evidence indicated that prior to her incarceration in 1999, respondent had maintained contact with her children but had failed to engage in any recommended services, including drug rehabilitation. The circuit court found respondent unfit pursuant to section 1(D)(m) of the Adoption Act, in that she failed to make "reasonable efforts" to correct the conditions which were the basis for the removal of her children, and failed to make "reasonable progress" toward their return. See 750 ILCS 50/1(D)(m) (West 2000). The circuit court determined, however, that it was not in the best interests of the children that respondent's parental rights be terminated.

Respondent appealed the circuit court's finding of unfitness, arguing that the court assessed her conduct during the wrong time frames. In finding respondent unfit under section 1(D)(m), the circuit court considered evidence only of respondent's efforts and progress during the nine-month period following its June 16, 1995, adjudication of abuse and neglect. Respondent maintained, however, that the proper date to begin assessing her efforts and progress was the date the circuit court entered its dispositional order: February 14, 1996. Respondent further maintained that although evidence of her progress toward the return of her children was limited to the nine-month period beginning February 14, 1996, evidence of her efforts to correct the conditions which led to the children's removal was not limited to

that nine-month period. Rather, the circuit court should have considered evidence of her efforts from February 14, 1996, through August 18, 2000—the date of the fitness hearing. According to respondent, had the circuit court considered evidence of her conduct during this 54-month period, the court would not have found her unfit. The appellate court rejected respondent's arguments and affirmed the judgment of the circuit court. 332 Ill. App. 3d 112. We allowed respondent's petition for leave to appeal (see 177 Ill. 2d R. 315) and now affirm.

## ANALYSIS

In a proceeding to terminate parental rights under the Juvenile Court Act of 1987, the State must first demonstrate, by clear and convincing evidence, that the parent is "unfit" under one or more of the grounds set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2000)). 705 ILCS 405/2—29(2) (West 2000); *In re C.W.*, 199 Ill. 2d 198, 210 (2002). In the present case, the State alleged that respondent was unfit under the grounds contained in section 1(D)(m). At the time the State filed its petition to terminate respondent's parental rights (November 1999), section 1(D)(m) defined unfitness in relevant part as:

> "Failure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act." 750 ILCS 50/1(D)(m) (West 1998).

On January 1, 2000, two months after the State filed its petition, an earlier legislative amendment to section 1(D)(m), adopted in 1999, took effect. See Pub. Act 91—373, eff. January 1, 2000. The 2000 version of section 1(D)(m) defines unfitness in relevant part as:

> "Failure by a parent (i) to make reasonable efforts to

correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act." 750 ILCS 50/1(D)(m) (West 2000).

Thus, the 2000 version of the statute included a third possible ground of unfitness. The wording of the earlier reasonable-efforts and reasonable-progress grounds, however, remained unchanged, with the exception that Roman numerals had been added. The parties agree that the 2000 version of section 1(D)(m), which was in effect at the time of the fitness hearing, is applicable to this case.

Our primary objective in construing section 1(D)(m) is to give effect to the intent of the legislature. See *C.W.*, 199 Ill. 2d at 211. The most reliable indicator of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *In re Mary Ann P.*, 202 Ill. 2d 393, 405 (2002). Where the language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Mary Ann P.*, 202 Ill. 2d at 405; *C.W.*, 199 Ill. 2d at 211. We review the appellate court's interpretation of this statute *de novo*. See *In re C.N.*, 196 Ill. 2d 181, 208 (2001).

Respondent first argues that the appellate court erred when it concluded that the nine-month period to assess a parent's fitness applies to both the reasonable-efforts ground in subsection (i) and the reasonable-progress ground in subsection (ii). Respondent maintains that the legislature intended, with its amendment in 1999, to "overhaul" section 1(D)(m) by "removing the rigid nine-

month evaluation period in the reasonable efforts ground," and that this is evident from the phraseology and construction of the 2000 statute. That is, the 2000 version "sets forth three separate enumerated grounds, specifying a time period for the second and third but not the first." *In re D.F.*, 317 Ill. App. 3d 461, 464-65 (2000).[1]

A plain language or literal reading of section 1(D)(m) supports respondent's position that the nine-month evaluation period applies only to a parent's reasonable progress and not a parent's reasonable efforts. A court, however, is not bound by the literal language of a statute that produces a result inconsistent with clearly expressed legislative intent, or that yields absurd or unjust consequences not contemplated by the legislature. *People v. Hanna*, 207 Ill. 2d 486, 497-98 (2003); *In re Detention of Lieberman*, 201 Ill. 2d 300, 312, 319 (2002); *Collins v. Board of Trustees of Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 112 (1993); see also *People v. Hudson*, 46 Ill. 2d 177, 181 (1970) (rules of statutory construction must yield when intent of legislature is otherwise indicated). A literal reading of section 1(D)(m) yields a result inconsistent with the legislature's statements of public policy and purpose contained in both the Juvenile Court Act (705 ILCS 405/1—1 *et seq.* (West 2000)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2000)).

---

[1]We note tangentially that respondent effectively concedes that, under the prior version of section 1(D)(m)—the one in effect when the State filed its petition to terminate respondent's parental rights—the nine-month period contained in the statute applied equally to a parent's reasonable efforts and reasonable progress. If that were not so, then respondent's argument, that the legislature intended to "overhaul" and "remove" the nine-month evaluation period for reasonable efforts when it amended the statute in 1999, would make little sense. We agree that the nine-month period contained in the prior version of section 1(D)(m) applied to both the reasonable efforts and reasonable progress ground. See *In re D.L.*, 191 Ill. 2d 1, 10 (2000).

A stated purpose of the Juvenile Court Act is to secure permanency for minors who have been removed from the custody of their parents "at the earliest opportunity." 705 ILCS 405/1—2(1) (West 2000). In furtherance of this purpose, the Juvenile Court Act provides that if a ground of unfitness under the Adoption Act can be met, it may be appropriate in some instances to "expedite termination of parental rights." 705 ILCS 405/1—2(1) (West 2000). "Liberal construction" of the Juvenile Court Act, to carry out the legislature's stated purpose and policy, is mandated. 705 ILCS 405/1—2(4) (West 2000). The statement of purpose and policy governing adjudicatory hearings also reflects that juvenile court proceedings are time sensitive:

"Purpose and policy. The legislature recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety and best interests of the minor and the effort to establish permanent homes for children in need. The purpose of this Section is to insure that, consistent with the federal Adoption Assistance and Child Welfare Act of 1980, Public Law 96—272, as amended, and the intent of this Act, the State of Illinois will act in a just and speedy manner to determine the best interests of the minor, including providing for the safety of the minor, identifying families in need, reunifying families where the minor can be cared for at home without endangering the minor's health or safety and it is in the best interests of the minor, and, if reunification is not consistent with the health, safety and best interests of the minor, finding another permanent home for the minor." 705 ILCS 405/2—14(a) (West 2000).

The Adoption Act expressly provides that it "shall be construed in concert with the Juvenile Court Act of 1987." 750 ILCS 50/2.1 (West 2000). Thus, the Adoption Act must be construed in light of the legislature's stated policy that juvenile court proceedings be brought to an expeditious conclusion. This notion is reinforced by the legislature's express statement that proceedings under

the Adoption Act "shall receive priority over other civil cases in being set for hearing," and that appealable orders under the Adoption Act "shall be prosecuted and heard on an expedited basis." 750 ILCS 50/20 (West 2000). Finally, the legislature has determined that "[i]t is in the best interests of persons to be adopted" that the Adoption Act be "construed and interpreted so as not to result in extending time limits beyond those set forth [t]herein." 750 ILCS 50/20a (West 2000).

In light of these clear statements of legislative policy and purpose, it is difficult to conclude, as respondent would have us do, that the legislature intended to remove the nine-month period for assessing a parent's reasonable efforts to correct the conditions that led to the removal of the child and replace it, instead, with an unspecified, open-ended, and essentially *unlimited* period of time. Such a literal reading of the statute could only result in delaying a child's permanent placement and cannot be reconciled with the legislature's expressly stated policy to expedite juvenile court proceedings. In the words of the public guardian, "[d]elay is antithetical to the purpose and policy of these two statutes." The tension between the literal language of section 1(D)(m) and the legislative policy that animates the Juvenile Court Act and the Adoption Act compels us to use extrinsic aids to construction. As this court recently observed:

> " '[I]f the clear language, when read in the context of the statute as a whole or of the commercial or other real-world *** activity that the statute is regulating, points to an unreasonable result, courts do not consider themselves bound by "plain meaning," but have recourse to other interpretive tools in an effort to make sense of the statute.' " *Hanna*, 207 Ill. 2d at 499, quoting *Krzalic v. Republic Title*, 314 F.3d 875, 879-80 (7th Cir. 2002).

Accordingly, we turn to the legislative history of section 1(D)(m).

The legislature first added a parent's failure to make reasonable efforts and progress as a ground of unfitness in 1973. See Pub. Act 78—854, eff. October 1, 1973. At that time, the statute specified the 24-month period after an adjudication of neglect as the relevant time frame to assess whether a parent made reasonable efforts or reasonable progress. Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1(D)(l). In 1977, the legislature shortened the 24-month period to a 12-month period. See Pub. Act 80—558, eff. October 1, 1977. The 12-month period remained in place for the next two decades.

In 1997, the legislature amended section 1(D)(m), changing the 12-month evaluation period to a nine-month period. See Pub. Act 90—28, eff. June 25, 1997 (section 1(D)(m) amendments), and eff. January 1, 1998 (all other amendments). This change to section 1(D)(m) of the Adoption Act was one of several measures adopted by the legislature as part of House Bill 165, which amended not only the Adoption Act, but several related acts: the Children and Family Services Act (20 ILCS 505/1 (West 1998)); the Child Care Act of 1969 (225 ILCS 10/1 (West 1998)); the Abused and Neglected Child Reporting Act (325 ILCS 5/1 (West 1998)); and the Juvenile Court Act of 1987 (705 ILCS 405/1—1 (West 1998)). Through the passage of House Bill 165, the legislature also enacted the Interstate Compact on Adoption Act (45 ILCS 17/5—1 (West 1998)). In short, House Bill 165 was a comprehensive approach aimed at "mov[ing] cases along through the system in an expedited fashion," particularly cases that had been "languishing" in the system. 90th Ill. Gen. Assem., House Proceedings, April 24, 1997, at 174, 176 (statements of Representative Dart); see also 90th Ill. Gen. Assem., House Proceedings, May 22, 1997, at 18-19 (statements of Representative Dart).

As already noted, in 1999, the legislature again

amended section 1(D)(m). See Pub. Act 91—373, eff. January 1, 2000. Unlike the prior amendment, which was part of a comprehensive measure, the 1999 amendment affected only section 1(D)(m). This amended version of the statute—which is the version at issue here—simply added a provision permitting a finding of unfitness where the parent fails to make reasonable progress during any nine-month period after the initial nine-month period. Significantly, the brief legislative history contains nothing to indicate that the General Assembly intended to "overhaul" section 1(D)(m), as respondent claims. See 91st Ill. Gen. Assem., Senate Proceedings, May 6, 1999, at 37-38 (statement of Senator Karpiel explaining limited reach of amendment). Indeed, the legislature left intact the language setting forth the nine-month time period. The legislature merely added additional language to the end of the statute, and inserted Roman numerals, breaking up the now-lengthy text.

Respondent places great weight on the addition of the Roman numerals, which function similarly to traditional punctuation in a statute. The punctuation of a statute, however, is subordinate to its text. *Smith v. County of Logan*, 284 Ill. 163, 171-72 (1918). That is, "[i]n the construction of a statute, its punctuation is to be considered and given weight *unless from inspection of the whole act it is apparent it must be disregarded in order to arrive at the intention of the legislature.*" (Emphasis added.) *Illinois Bell Telephone Co. v. Ames*, 364 Ill. 362, 368 (1936). Our inspection of both the Adoption Act and the Juvenile Court Act, as well as the legislative history of section 1(D)(m), indicates the legislature's ongoing desire to *shorten* the period of time during which a parent must make reasonable efforts and progress or be deemed unfit. Giving great weight to the addition of the Roman numerals would, as respondent concedes, make the "ending point of the reasonable efforts analysis

limitless." We believe that had the legislature intended such a radical departure from its historical treatment of this issue and its express statements of policy, the legislature would have done so directly with appropriate statutory language, rather than resorting to the use of "(i)," "(ii)" and "(iii)."

Respondent argues further that the 1999 amendment of section 1(D)(m) was a reaction to the appellate court's decision in *In re Davonte L.*, 298 Ill. App. 3d 905 (1998), which purportedly misconstrued the statute and created a conflict in the case law. See *People v. Hickman*, 163 Ill. 2d 250, 262 (1994) (where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law).

The events giving rise to the appeal in *Davonte L.* arose under the version of section 1(D)(m) that contained a 12-month evaluation period. See 750 ILCS 50/1(D)(m) (West 1992). At issue was whether the trial court, at the fitness hearing, could consider evidence of the parent's progress outside the 12-month period. From the date the trial court found Davonte neglected, to the date of the fitness hearing, four years had passed. The trial court focused on the mother's recent efforts, rather than the 12-month period following the adjudication of neglect, and ruled that the State had failed to prove the mother unfit under section 1(D)(m).

The First District reversed, holding that "courts are restricted to allowing evidence only from the 12-month period following an adjudication of neglect in determining parental fitness." *Davonte L.*, 298 Ill. App. 3d at 924. The appellate court reasoned that the legislative history of section 1(D)(m) indicated an intent to shorten the period of time from which evidence of a parent's conduct may be considered, not to lengthen it. *Davonte L.*, 298 Ill. App. 3d at 924. Further, a parent should not be al-

lowed to circumvent his or her own unfitness because a bureaucratic delay in bringing a case to trial allows a parent additional time to take corrective action. *Davonte L.*, 298 Ill. App. 3d at 922. The evidence of the mother's conduct during the relevant 12-month period indicated that she was "clearly an addict and showed almost no interest in Davonte's care or welfare." *Davonte L.*, 298 Ill. App. 3d at 925. Significantly, *Davonte L.* departed from appellate court decisions in other districts which had held that the 12-month period merely specified the period of rehabilitation following the child's removal before which the parent could not be found unfit, but that a court could consider evidence of the parent's conduct during the entire postadjudication period. See *Davonte L.*, 298 Ill. App. 3d at 923-24 (collecting cases).

We affirmed *Davonte L.*, stating in relevant part:

> "The statute plainly states that a parent is unfit if the parent fails to make either reasonable efforts to correct the conditions that led to the child's removal or reasonable progress toward return of the child within 12 months after an adjudication of neglect, abuse, or dependency. Giving effect to the plain language of section 1(D)(m), we conclude that the relevant period of time under this provision, in which the parent's efforts or progress must be assessed and measured, is the 12-month period following the adjudication.

> If the legislature had meant merely to provide a minimum period of time before which a petition alleging this particular ground could be filed, *** then the legislature could have simply and explicitly stated that a petition to terminate parental rights on the ground specified in section 1(D)(m) must be filed 12 or more months after the adjudication of wardship, without suggesting any limitation on the period from which the evidence could be drawn. In that way, evidence of efforts made by the parents after passage of the time limit could still be presented." *In re D.L.*, 191 Ill. 2d 1, 10 (2000).

Following the appellate court's decision in *Davonte L.*, but prior to our decision in *D.L.*, the legislature

amended section 1(D)(m), resulting in the version of the statute at issue here. Respondent maintains that the timing of the amendment indicates that the legislature intended to correct the "conflict-creating interpretation" of section 1(D)(m) that the appellate court adopted in *Davonte L.* That is, the legislature intended that a trial court be allowed to consider evidence of the parent's efforts during the entire postadjudication period, and not simply the 12 or 9 months specified in the statute, as held in *Davonte L.*

Assuming, *arguendo*, that the legislature's 1999 amendment to section 1(D)(m) was, in fact, triggered by the appellate court's decision in *Davonte L.*, we disagree with respondent that the legislature intended to remove the nine-month evaluation period for assessing a parent's reasonable efforts. The legislative history indicates that, immediately prior to the adoption of the 1999 amendment to section 1(D)(m), Senator Karpiel explained that the amendment was intended to permit trial courts to consider evidence of a parent's reasonable progress during periods other than the nine-month period then specified in the statute. See 91st Ill. Gen. Assem., Senate Proceedings, May 6, 1999, at 37-38 (statement of Senator Karpiel). The legislature accomplished this objective by adding a third ground of unfitness to section 1(D)(m) based on a parent's failure "to make reasonable progress toward the return of the child to the parent during *any* 9-month period after the end of the initial 9-month period.*" (Emphasis added.) 750 ILCS 50/1(D)(m) (West 2000). If the legislature had also intended, as respondent argues, to permit trial courts to consider evidence of the parent's reasonable efforts outside the initial nine-month period, then the legislature could have amended the reasonable-efforts ground in similar fashion; it did not.

Because a literal reading of section 1(D)(m) cannot be reconciled with the legislature's clear expressions of

policy and purpose in the Juvenile Court Act and the Adoption Act, and the legislative history of section 1(D)(m) evinces no intent by the legislature to depart from its long-standing efforts to expedite juvenile court proceedings, we conclude, as did the appellate court, that the 1999 amendment to section 1(D)(m) of the Adoption Act retained the nine-month period for assessment of a parent's reasonable efforts.

We now turn to the second issue in this appeal: whether, as argued by respondent, the nine-month evaluation period begins on the date the circuit court enters its dispositional order (here, February 14, 1996), or, as held by the appellate court, the nine-month period begins on the date the circuit court enters its adjudication of neglect, abuse or dependency (here, June 16, 1995). 332 Ill. App. 3d at 120-24.

As a preliminary matter, we consider the argument raised by the Cook County public guardian that respondent waived review of this issue. The record indicates that, following the close of evidence during the fitness portion of the proceeding to terminate respondent's parental rights, respondent argued that evidence of her reasonable efforts and progress should be considered beginning June 16, 1995, *or* February 14, 1996. Respondent did not object when the court used the earlier date. Thus, we agree with the public guardian that respondent waived review of this issue. See *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001) (where a party acquiesces in proceeding in a given manner, the party is not in a position to claim prejudice thereby), quoting *People v. Schmitt*, 131 Ill. 2d 128, 137 (1989); *Parks v. Kownacki*, 193 Ill. 2d 164, 180 (2000) ("Questions not raised in the trial court cannot be argued for the first time on appeal").

The rule of waiver, however, is a limitation on the parties and not on the court. *Dillon v. Evanston Hospital*,

199 Ill. 2d 483, 504-05 (2002). A reviewing court may override considerations of waiver in furtherance of its responsibility to maintain a sound and uniform body of precedent. *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 463 (2003), quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 251 (1994), quoting *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967); *Dillon*, 199 Ill. 2d at 505; see also *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 73 (2002) (declining to apply waiver where the issue was one of law and was fully briefed and argued). We note that there is a lack of uniformity in the case law as to the appropriate date from which to assess a parent's fitness under section 1(D)(m). Compare, *e.g.*, *In re D.S.*, 313 Ill. App. 3d 1020, 1027-28 (2000) (using date of dispositional order as start date), with *In re M.A.*, 325 Ill. App. 3d 387, 392 (2001) (using date of neglect adjudication as start date). We, therefore, choose to address this issue on the merits.

Section 1(D)(m) provides that a parent will be deemed unfit based on the failure to make reasonable efforts or progress "within 9 months *after an adjudication of neglected or abused minor *** or dependent minor*." (Emphasis added.) 750 ILCS 50/1(D)(m) (West 2000). Respondent argues that the legislature actually intended for the nine-month period to begin when the court enters its dispositional order because that is the date the adjudication of neglect, abuse, or dependency is "complete." See *D.S.*, 313 Ill. App. 3d at 1028.

We believe the statutory language referring to the adjudication of neglect, abuse or dependency as the date on which the nine-month period begins is clear and unambiguous. Nonetheless, to the extent any doubt exists, it is quickly dispelled by reference to those provisions of the Juvenile Court Act that govern adjudicatory and dispositional hearings.

Section 2—14 of the Juvenile Court Act, titled "Date

for Adjudicatory Hearing," provides that "[w]hen a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be commenced within 90 days ***." 705 ILCS 405/2—14(b) (West 2000). Section 2—21, titled "Findings and adjudication," states in relevant part:

"(1) ***

* * *

After hearing the evidence the court shall determine whether or not the minor is abused, neglected, or dependent. ***

If the court finds that the minor is abused, neglected, or dependent, the court shall then determine and put in writing the factual basis supporting that the determination ***. That finding shall appear in the order of the court.

If the court finds that the child has been abused, neglected or dependent, the court shall admonish the parents that they must cooperate with the Department of Children and Family Services, comply with the terms of the service plan, and correct the conditions that require the child to be in care, or risk termination of parental rights.

***

(2) If, pursuant to subsection (1) of this Section, the court determines *** that the minor is either abused or neglected or dependent, the court shall then set a time not later than 30 days after the entry of the finding for a dispositional hearing *** under Section 2—22 ***." 705 ILCS 405/2—21(1) (West 2000).

Section 2—22, in turn, states that, "[a]t the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court, and, if he is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety and interests of the minor and the public." 705 ILCS 405/2—22(1) (West 2000). At the dispositional hearing, the court may consider all helpful evidence, "even though not competent

for the purposes of the adjudicatory hearing." 705 ILCS 405/2—22(1) (West 2000). Finally, section 2—23 sets forth the kinds of orders that may be entered at the dispositional hearing. 705 ILCS 405/2—23 (West 2000).

The foregoing provisions of the Juvenile Court Act demonstrate that the legislature envisioned two distinct hearings: the adjudicatory hearing, at which the trial court determines whether the child is neglected, abused or dependent, and the dispositional hearing, at which the trial court determines whether the child should be made a ward of the court and, if so, the proper disposition. The foregoing provisions also demonstrate that the legislature was adept at identifying and distinguishing between the two hearings. In section 1(D)(m) of the Adoption Act, the legislature clearly identified the *"adjudication of neglected or abused minor \*\*\* or dependent minor"* (emphasis added) (750 ILCS 50/1(D)(m) (West 2000)) as the date the nine-month evaluation period begins. We are not persuaded, as respondent claims, that the legislature actually intended this language to refer to the date the dispositional order is entered.

Further, respondent's reading of section 1(D)(m) would lengthen the period of time in which a parent could demonstrate reasonable efforts and progress. For example, in the present case, the trial court adjudged the children neglected and abused on June 16, 1995. The trial court entered its dispositional order eight months later on February 14, 1996. If the evaluation period does not begin until the dispositional order is entered, parents will have a "free pass" during the immediate postadjudication period—a result clearly contrary to the legislature's stated policy and purpose of expediting juvenile court proceedings and seeking permanency for children in a "just and speedy" manner. 705 ILCS 405/2—14(a) (West 2000).

We observe that our reading of section 1(D)(m) is

consistent with this court's opinion in *D.L.* As discussed above, in *D.L.*, we held that the then 12-month period set forth in section 1(D)(m) limited the evidence a trial court may consider in determining whether a parent is unfit under this ground. *D.L.*, 191 Ill. 2d at 10. In identifying the correct period of time from which evidence could be drawn in that case, we referred to the 12-month period beginning with the date the court adjudged the minor neglected—not the date the court entered its dispositional order. We recognize that our determination of the correct date to begin evaluating the parent's conduct in *D.L.*, although necessary to the opinion, did not address a point specifically argued by the parties. Having squarely addressed that point now, we find no good reason to depart from our decision in *D.L.*

As a final matter, we turn to respondent's alternative argument that the trial court's finding of unfitness was against the manifest weight of the evidence. As already held, the appropriate time period is the nine months following the adjudication of neglect and abuse. Thus, the only relevant evidence for purposes of the unfitness finding is evidence of respondent's conduct during the period June 16, 1995, through March 15, 1996. Respondent, however, does not challenge the sufficiency of this evidence. Instead respondent focuses on evidence of her conduct during the nine months after the dispositional order was entered, *i.e.*, February 16, 1996, through November 15, 1996. This evidence, she maintains, is insufficient to find her unfit. Plainly, respondent's argument misses the mark by focusing on the wrong evidence.

We note that the appellate court reviewed the sufficiency of the evidence from the correct time period and concluded that the trial court's finding of unfitness was not against the manifest weight of the evidence. 332 Ill. App. 3d at 124-26. The appellate court stated:

"We understand '[t]he involuntary termination of a parent's rights is a drastic step that permanently severs

the parent-child relationship.' [Citation.] For that reason we have carefully reviewed the record to ensure the existence of clear and convincing evidence of unfitness during the statutorily dictated relevant time periods.

*** The trial court was not permitted to consider any evidence outside the nine-month period dictated by section 1(D)(m). Thus, Lashawn's progress and efforts [outside this time period] are irrelevant to the fitness determination. As Lashawn admitted during the January 30, 2001, hearing. 'I have done everything that I was supposed to do; but I didn't do it, you know, in the time span that I had to do it. And, you know, honestly, it's probably too little too late.' " 332 Ill. App. 3d at 126.

Respondent provides no cogent argument for reversing the finding of unfitness.

## CONCLUSION

For the reasons discussed above, we hold that the nine-month evaluation period in section 1(D)(m) of the Adoption Act, as amended by Public Act 91—373, effective January 1, 2000, applies to both the reasonable-efforts ground and the reasonable-progress ground, and that the date on which to begin assessing a parent's efforts or progress is the date the trial court enters its order adjudging the minor neglected, abused, or dependent, rather than the date the trial court enters its dispositional order. We, therefore, affirm the appellate court.

*Affirmed.*

JUSTICE FREEMAN, specially concurring:

The majority holds that the proper time frame during which a parent's conduct is assessed to determine whether the parent is "unfit" is the nine-month period following the trial court's adjudication of neglect, abuse or dependency. The majority also holds that the nine-month period is applicable whether the parent is found "unfit" because the parent failed to make "reasonable

efforts" to correct the conditions that led to the removal of the children, or whether the parent failed to make "reasonable progress" toward the return of the children. See 750 ILCS 50/1(D)(m) (West 2000). Insofar as it applies to a parent's efforts to correct the conditions that led to the removal of the children, the majority's holding is contrary to the express language of the statute and to the legislature's clearly stated intention. Because the majority's construction of the statutory provision gives short shrift to the work of the legislature, and because the majority does not give due consideration to the interests of the state, the child and the parent in family preservation and reunification, I cannot join this portion of the majority opinion.

ANALYSIS

The majority opinion must be understood in the context of *In re Davonte L.*, 298 Ill. App. 3d 905 (1998), and the legislative amendment to section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2000)) that followed. In *In re Davonte L.*, 298 Ill. App. 3d 905, the appellate court held that a parent may be found unfit under section 1(D)(m) of the Adoption Act (750 ILCS 50/ 1(D)(m) (West 1994)) for failure to make reasonable progress toward the return of the child to the parent within 12 months after an adjudication of neglect.[2] The appellate court ruled that the trial court erred in considering the parent's actions beyond the 12-month period following the adjudication of neglect. The appellate court reversed the trial court's finding that the parent was fit because that finding was based on the parent's actions beyond the relevant 12-month period.

On appeal, this court affirmed the judgment of the appellate court. *In re D.L.*, 191 Ill. 2d 1 (2000). The court

---

[2]The 12-month period was shortened to nine months effective June 25, 1997. Pub. Act 90—28, eff. June 25, 1997.

held that, pursuant to section 1(D)(m), a parent is unfit if, within twelve months of an adjudication of neglect, abuse, or dependency, the parent fails to make reasonable efforts to correct the conditions that led to the removal of the child or reasonable progress toward the return of the child. *In re D.L.*, 191 Ill. 2d at 10. The evidence that may be considered by the trial court at the fitness hearing is limited to that concerning the parent's conduct in the twelve months following the adjudication of neglect, abuse, or dependency. *In re D.L.*, 191 Ill. 2d at 10. Because there were several grounds for a finding of unfitness, I filed a separate opinion concurring in the result reached by the majority. However, I disagreed with the holding of the majority that the plain language of section 1(D)(m) limits the evidence that may be considered in a fitness hearing to matters concerning the parent's conduct in the twelve months following an adjudication of neglect, abuse, or dependency. I noted that, with the exception of *In re Davonte L.*, the various panels of the appellate court that had considered the issue had held that, in determining whether a parent is an "unfit person," a trial court may consider the parent's conduct during the entire period of time between the adjudication of neglect, abuse, or dependency and the fitness hearing. *In re D.L.*, 191 Ill. 2d at 14 (Freeman, J., specially concurring), citing *In re Latifah P.*, 307 Ill. App. 3d 558 (1999), *withdrawn and republished at* 315 Ill. App. 3d 1122 (2000); *In re H.C.*, 305 Ill. App. 3d 869 (1999); *In re Y.B.*, 285 Ill. App. 3d 385 (1996); *In re A.P.*, 277 Ill. App. 3d 592 (1996); *In re J.T.C.*, 273 Ill. App. 3d 193 (1995); *In re D.J.*, 262 Ill. App. 3d 584 (1994); *In re S.J.*, 233 Ill. App. 3d 88 (1992); *In re C.R.*, 221 Ill. App. 3d 373 (1991); *In re S.G.*, 216 Ill. App. 3d 668 (1991); *In re M.S.*, 210 Ill. App. 3d 1085 (1991); *In re M.C.*, 201 Ill. App. 3d 792 (1990); *In re A.T.*, 197 Ill. App. 3d 821 (1990); *In re R.S.*, 174 Ill. App. 3d 132 (1988); *In re Allen*, 172

Ill. App. 3d 950 (1988); *In re Doolan,* 101 Ill. App. 3d 322 (1981); *In re Edmonds,* 85 Ill. App. 3d 229 (1980); *In re Austin,* 61 Ill. App. 3d 344 (1978).

In response to *In re Davonte L.,* 298 Ill. App. 3d 905, the legislature amended the Adoption Act as follows:

> "D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following:

> \* \* \*

> (m) Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act, *or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act.* If a service plan has been established as required under Section 8.2 of the Abused and Neglected Child Reporting Act to correct the conditions that were the basis for the removal of the child from the parent and if those services were available, then, for purposes of this Act, 'failure to make reasonable progress toward the return of the child to the parent' includes (I) the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care within 9 months after the adjudication under Section 2—3 or 2—4 of the Juvenile Court Act of 1987 *and (II) the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period after the end of the initial 9-month period following the adjudication*

*under Section 2—3 or 2—4 of the Juvenile Court Act of 1987.*" (Emphasis in original.) Pub. Act 91—0373, § 5, eff. January 1, 2000 (codified at 750 ILCS 50/1(D)(m) (West 2000)).

Although brief, the legislative history on the amendment contains the following statement:

"SENATOR KARPIEL: *** House Bill 1298 amends the Adoption Act. It amends the grounds of parental unfitness to include failure to make reasonable progress toward the return of a child to the parent during any nine-month period after the end of the initial nine-month period following the adjudication of the child as neglected, abused or a dependent. At present under the Adoption Act, they—the court can only use evidence in the nine-month period from the adjudication to the filing period of termination. And since the termination hearing sometimes isn't till maybe a year later, the court would really like to hear—be able to hear evidence during the other—the rest of the period. This can be good or bad for a—a parent. Sometimes that first nine-month period, perhaps they don't really get their act together too well, and then they—at the termination hearing, the court can only use a bad evidence of—of their fitness for being a parent, or it can be that they start out good and then they start—start to slowly go back to their old bad ways and that's not so good for the kids. So either way, but the court would like to be able to use the entire time, look at the evidence during that entire period. And that's all the bill does." 91st Ill. Gen. Assem., Senate Proceedings, May 6, 1999, 37-38 (statements of Senator Karpiel).

Senator Karpiel's statement reflects the legislature's understanding that, prior to *In re Davonte L.*, the courts considered evidence of reasonable progress made by a parent between the adjudication of neglect and the filing of the petition for termination of parental rights. The statement also reflects the legislature's intention that the Adoption Act be amended to allow the courts to consider evidence of reasonable progress made by the parent during any nine-month period between the adjudication of neglect and the date of the termination

hearing. The legislature wanted to protect the parent who failed to make progress during the initial nine-month period following the adjudication of neglect, but made reasonable progress during any subsequent nine-month period. At the same time, the legislature wanted to protect the child whose parent made progress during the initial nine-month period but reverted to negative behavior in any subsequent nine-month period.

In the present case, this court is, once again, interpreting the language of section 1(D)(m). The trial court found respondent unfit in that she failed to make "reasonable efforts" to correct the conditions that led to the removal of the children and failed to make "reasonable progress" toward the return of the children. See 750 ILCS 50/1(D)(m) (West 2000). In finding respondent unfit, the trial court only considered evidence of respondent's efforts and progress during the nine-month period following the adjudication of abuse and neglect. On appeal, respondent argues that evidence of her efforts to correct the conditions that led to the removal of the children should not be limited to the nine-month period prescribed for a parent's progress toward the return of a child. Respondent also argues that both the trial court's finding of unfitness based upon respondent's failure to make "reasonable efforts" and respondent's failure to make "reasonable progress" are against the manifest weight of the evidence.

The majority agrees that "[a] plain language or literal reading of section 1(D)(m) supports respondent's position that the nine-month evaluation period applies only to a parent's reasonable progress and not a parent's reasonable efforts." 208 Ill. 2d at 230. However, the majority notes this court "is not bound by the literal language of a statute that produces a result inconsistent with clearly expressed legislative intent, or that yields absurd or unjust consequences not contemplated by the

legislature." 208 Ill. 2d at 230. Next, the majority notes that a "stated purpose of the Juvenile Court Act is to secure permanency for minors who have been removed from the custody of their parents, 'at the earliest opportunity.' 705 ILCS 405/1—2(1) (West 2000)." 208 Ill. 2d at 231. The majority then holds that "[a] literal reading of section 1(D)(m) yields a result inconsistent with the legislature's statements of public policy and purpose contained in both the Juvenile Court Act (705 ILCS 405/1—1 *et seq.* (West 2000)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2000))." 208 Ill. 2d at 230.

In arriving at its holding, the majority necessarily rejects respondent's argument that the legislature intended to effectuate a change in the evidence of unfitness that a trial court may consider. Initially, the majority notes: "Respondent places great weight on the addition of the Roman numerals, which function similarly to traditional punctuation in a statute. The punctuation of a statute, however, is subordinate to its text." 208 Ill. 2d at 234. The majority then claims that, in amending the statute, the legislature only wanted to add an additional ground of unfitness, that is, failure to make reasonable progress toward the return of the child during any nine-month period after the end of the initial nine-month period. 208 Ill. 2d at 234. The legislature did not intend to remove the requirement that a parent make reasonable efforts to correct the conditions that led to the removal of the child during the initial nine-month period. 208 Ill. 2d at 237.

Since the majority arrives at its holding by application of the "absurd results" doctrine, I note there are limitations to the use of the doctrine. As the West Virginia Supreme Court explained in *Taylor-Hurley v. Mingo County Board of Education*, 209 W. Va. 780, 788, 551 S.E.2d 702, 710 (2001), "[t]he absurd results doctrine merely permits a court to favor an otherwise reasonable

construction of the statutory text over a more literal interpretation where the latter would produce a result demonstrably at odds with any conceivable legislative purpose. [Citation.] It does not, however, license a court to simply ignore or rewrite statutory language on the basis that, as written, it produces an undesirable policy result." I also note the cautionary statement in Sutherland on Statutory Construction that "the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said." 2A N. Singer, Sutherland on Statutory Construction § 46:07, at 199 (6th ed. 2000). In the present case, I submit that the result the majority seeks to avoid is not "demonstrably at odds" with the purposes and goals of the legislature in amending the Adoption Act. I also submit there is nothing "absurd" in allowing the trial court to consider all evidence of a parent's efforts to correct the conditions that led to the removal of the children. In these proceedings, as in all other truth-seeking proceedings, it is of great import that the trial court access and consider relevant evidence. Lastly, I submit that the majority is displacing legislative policy on the basis of speculation.

In my estimation, the majority fails to give due consideration to the change the legislature intended in amending section 1(D)(m). Section 1(D)(m)(i), the provision concerning a parent's "reasonable efforts," does not refer to a particular time period. Contrarily, sections 1(D)(m)(ii) and 1(D)(m)(iii), the provisions concerning a parent's "reasonable progress," both refer to a time period for assessment of the parent's conduct. "Where one section of a statute contains a particular provision, omission of the same provision from a similar section is significant to show different legislative intent for the two sections." 2A N. Singer, Sutherland on Statutory Construction § 46:07, at 202-04 (6th ed. 2000).

It is also a maxim of statutory construction that "an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it theretofore existed." *Weast Construction Co. v. Industrial Comm'n*, 102 Ill. 2d 337, 340 (1984). As this court explained in *Modern Dairy Co. v. Department of Revenue*, 413 Ill. 55, 66 (1952),

> "When this court construes a statute and that construction is not interfered with by the legislature, it is presumed that such construction is in harmony with the legislative intent. [Citation.] Conversely, if the legislature, after the courts construe the terms used in an act, attempts by amendment to define those terms as used in that act, the reasonable presumption is that the court's construction was not in accord with the original intent of the legislature. [Citations.] It would then seem incumbent upon the court to reconsider its construction of the act and, if it appeared to be clearly at variance with the interpretation of the legislature, to harmonize the court's construction with the legislative intent."

More recently, in *Collins v. Board of Trustees of Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993), this court noted that "[a]n amendment that contradicts a recent interpretation of a statute is an indication that such interpretation was incorrect and that the amendment was enacted to clarify the legislature's original intent."

In *Davonte L.*, the appellate court sharply restricted the evidence that the trial court could consider in a determination of unfitness. The legislature responded to the ruling by removing the time limitations for evidence of a parent's reasonable efforts to correct the conditions that led to the removal of the child and allowing the trial court to consider evidence of a parent's reasonable progress toward the return of the child during any nine-month period between the adjudication of neglect or abuse and the fitness hearing. The majority should not

undo the work of the legislature under the guise of statutory construction.

The majority concedes that a literal reading of section 1(D)(m) supports the conclusion that the legislature removed any time limitation on evidence of a parent's "reasonable efforts" to correct the conditions that led to the removal of the child. Further, given the legislature's concern, as expressed in Senator Karpiel's statement, that the trial court be able to review all evidence concerning a parent's "reasonable progress," a reasonable interpretation of the amendment is that the legislature also intended that the trial court be able to review all evidence concerning a parent's efforts to correct the conditions that led to the removal of the child.

In spite of its concession regarding the language of the amendment, the majority dismisses respondent's argument that the legislature intended to effectuate a change in section 1(D)(m). Without citation to authority, the majority asserts that Roman numerals function similarly to traditional punctuation in a statute. Then, citing *Smith v. County of Logan*, 284 Ill. 163, 171-72 (1918), the majority observes that the punctuation of a statute is subordinate to its text. 208 Ill. 2d at 234. I note that at least one court would attach significance to the insertion of Roman numerals in a statute. See *Resolution Trust Corp. v. Nernberg*, 3 F.3d 62 (3d Cir. 1993). I also note that *Smith* is not as supportive as claimed, when the proposition for which it is cited is viewed in context.

In *Smith*, 284 Ill. 163, the court considered whether the State's Attorney for a county with more than 30,000 but less than 51,000 inhabitants was entitled to receive the sum of $3,500 as compensation from the county as provided by statute, and an additional sum of $400 from the state. The statute provided as follows:

"To each State's attorney in counties not exceeding 30,000 inhabitants, the sum of $100.00 per each 1,000 inhabitants and major fraction thereof, the said salary to

be in addition to that now provided by law to be paid by the State: Provided, however, that the maximum sum to be paid any State's attorney in any of such counties shall not exceed the sum of $2,500.00 per annum.

To each State's attorney in counties containing not less than 30,000 inhabitants and not more than 51,000 inhabitants, the sum of $3,500.00 per annum; to each State's attorney in counties containing not less than 51,000 inhabitants and not more than 100,000 inhabitants, the sum of $5,000.00 per annum in the aggregate, which sum shall include the salary which is to be paid out of the State treasury as now provided by law; to each State's attorney in counties containing not less than 100,000 inhabitants and not more than 250,000 inhabitants, the sum of $6,000.00 per annum; to each State's attorney in counties of more than 250,000 inhabitants, the sum of $10,000.00 per annum." 1911-12, Ill. Law 89.

In holding that the statutory provision for compensation for a State's Attorney of a county containing more than 30,000 but less than 51,000 inhabitants did not include the $400 paid by the state, the court reasoned:

"Counsel for defendant in error further argue that the statute, in referring to the second and third classes, should be read together, and that the word 'sum' in connection with the third class should be read 'sums,' and if so read it will clearly refer to counties both of the second and of the third class. Such a construction of the wording of the act is not a natural one and is contrary to the punctuation found therein. There is a semicolon between the wording which refers to the second class of counties and that referring to the third class of counties immediately following. The punctuation of a law adopted by the legislature, while it remains subordinate to the text and is not necessarily controlling in determining the legislative intent, certainly ought not to be totally disregarded, unless on inspection of the whole act it is apparent that it must be, in order to reach the real intent of the legislature. [Citation.] It is obvious from a mere reading of this statute that to disregard this punctuation would be contrary to what seems to be the plain legislative intent.

If we are to give any force to the argument that all parts

of the present statute should be taken into consideration as well as the previous legislation on this subject, it will be fair to assume that the legislature would surely give as much attention to the reading of the present statute as it would to the wording and reading of previous legislation on this subject. It would seem to be self-evident that the legislature, in referring specifically to the $400 to be paid by the State as to two classes of counties, must have had in mind the question whether the $400 was to be included or excluded in the total salary to be paid to the State's attorneys in the various classes of counties, and it seems the most reasonable conclusion to hold that the legislature, in including specifically this $400 as a part of the salary in two classes of counties and being silent as to whether or not it should be included in the other three classes of counties, did not intend to have it included in said three classes in which it was not mentioned." *Smith*, 284 Ill. at 171-72.

In the present case, the statute is divided clearly by the use of commas and Roman numerals between the different grounds for a finding of unfitness. To hold, as the majority does, that the nine-month time period applies to the "reasonable efforts" grounds is to totally disregard the punctuation of the statute. Further, the fact that the legislature included a time limitation for a parent's failure to make "reasonable progress" toward the return of the children shows that the legislature had in mind the question as to the appropriate time limitation in the termination of a parent's rights. As in *Smith*, the most logical conclusion is that the legislature, in including specifically a time limitation for a parent's failure to make "reasonable progress" toward the return of the children, and being silent as to a time limitation for a parent's failure to make "reasonable efforts" to correct the conditions that led to the removal of the children, did not intend to impose a time limitation for the "reasonable efforts" ground of unfitness.

Unlike the majority, I believe that the nine-month time period does not apply to a parent's "reasonable ef-

forts" to correct the conditions that led to the removal of the children. I note this construction of the statute is consistent with the remaining provisions of section 1(D)(m). The section provides:

> "If a service plan has been established as required under Section 8.2 of the Abused and Neglected Child Reporting Act to correct the conditions that were the basis for the removal of the child from the parent and if those services were available, then, for purposes of this Act, 'failure to make reasonable progress toward the return of the child to the parent' includes (I) the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care within 9 months after the adjudication under Section 2—3 or 2—4 of the Juvenile Court Act of 1987 and (II) the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period after the end of the initial 9-month period following the adjudication under Section 2—3 or 2—4 of the Juvenile Court Act of 1987." Pub. Act 91—0373, § 5 eff. January 1, 2000 (codified at 750 ILCS 50/1(D)(m) (West 2000).

In other words, if a service plan has not been established under section 8.2 of the Abused and Neglected Child Reporting Act to correct the conditions that were the basis for the removal of the child or if a service plan is established but recommended services are not available to the parent, the parent's failure to make "reasonable efforts" to correct the conditions, either during the initial nine-month period or any subsequent nine-month period, cannot be equated with the failure to make "reasonable progress" toward the return of the child. The time period comes into play only where a service plan is established and services are provided to the parent.

The interpretation advanced in the majority opinion is largely based upon the desire to minimize delay in the placement of the child in a permanent setting. Delay, however, is not the only consideration in a proceeding

where the State seeks the appointment of a guardian with the right to consent to adoption. Parental rights are at issue and the fundamental nature of these rights requires just consideration. The Supreme Court so explained in *M.L.B. v. S.L.J.*, 519 U.S. 102, 136 L. Ed. 2d 473, 117 S. Ct. 555 (1996), a recent case involving the termination of parental rights:

"Significant to the disposition of M.L.B.'s case, the *Lassiter* [*v. Department of Social Services*, 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981)] Court considered it 'plain ... that a parent's desire for and right to "the companionship, care, custody, and management of his or her children" is an important interest,' one that ' "undeniably warrants deference and, absent a powerful countervailing interest, protection." ' *Id.*, at 27 (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). The object of the proceeding is 'not simply to infringe upon [the parent's] interest,' the Court recognized, 'but to end it'; thus, a decision against the parent 'work[s] a unique kind of deprivation.' *Lassiter*, 452 U.S., at 27. For that reason, '[a] parent's interest in the accuracy and justice of the decision ... is ... a commanding one.' *Ibid.*; see also *id.*, at 39 (Blackmun, J., dissenting) ('A termination of parental rights is both total and irrevocable. Unlike other custody proceedings, it leaves the parent with no right to visit or communicate with the child ... .' (footnote omitted)).

*Santosky* [*v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982)] held that a 'clear and convincing' proof standard is constitutionally required in parental termination proceedings. *Id.*, at 769-770. In so ruling, the Court again emphasized that a termination decree is '*final* and irrevocable.' 455 U.S. at 759 (emphasis in original). 'Few forms of state action,' the Court said, 'are both so severe and so irreversible.' *Ibid.* As in *Lassiter*, the Court characterized the parent's interest as 'commanding,' indeed, 'far more precious than any property right.' 455 U.S., at 758-759.

Although both *Lassiter* and *Santosky* yielded divided opinions, the Court was unanimously of the view that 'the interest of parents in their relationship with their children

is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment.' 455 U.S., at 774 (Rehnquist, J., dissenting). It was also the Court's unanimous view that '[f]ew consequences of judicial action are so grave as the severance of natural family ties.' *Id.*, at 787." *M.L.B. v. S.L.J.*, 519 U.S. at 117-19, 136 L. Ed. 2d at 488-89, 117 S. Ct. at 564-65.

In the present case, the majority is concerned, as it should be, with the potential delays in the adoption of respondent's children. The majority, however, must be equally concerned with respondent's interest in the care, custody, and control of her children. See *Troxel v. Granville*, 530 U.S. 57, 65, 147 L. Ed. 2d 49, 56, 120 S. Ct. 2054, 2060 (2000). As the Supreme Court observed in *Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 558, 92 S. Ct. 1208, 1212 (1972), "the interest of a parent in the companionship, care, custody, and management of his or her children 'come to [the courts] with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' [Citation.]"

I note that family reunification, consistent with the health, safety and best interests of the child, is a goal of the Juvenile Court Act. 705 ILCS 405/2—14(a) (West 2000). In furtherance of that goal, and in light of the irrevocable nature of the termination of the parent-child relationship, the trial court should consider all evidence of a parent's efforts to correct the conditions that led to the removal of the child. I also note that delay in permanent placement may flow directly from decisions made by the Department of Children and Family Services. In the present case, the trial court entered an order on June 16, 1995, finding that the children were abused and neglected. The State waited until November 1, 1999, to file a supplemental petition for the appointment of a guardian with the right to consent to the children's adoption.

## CONCLUSION

I cannot join fully in today's opinion because the majority's construction of the statute is contrary to the legislature's intention in amending the statute and is contraindicated by the express language of the statute. While I understand, and fully support, the goal of minimizing the time a child spends in foster care and the time it takes to process a child's adoption into a loving home, I also understand the value of family ties and family reunification. Where it may be in one child's interest to be adopted quickly into a waiting adoptive family, it may be in another child's interest to heal family wounds, correct the conditions that led to the separation of the family, arm the parents with new skills to help in their parenting efforts and reunite the child and parents into a family unit. Our legislature is in the best position to make a determination based on social goals as to how long efforts at reunification should take and how quickly parenting rights may be terminated. Unfortunately, in its rush to remedy the delays associated with foster care placement and the adoption process, the majority has created social legislation incompatible with the goals our legislature seeks to pursue and the delicate balance our legislature has reached between the child's right to placement in a loving home, whether familial or adoptive, the parent's right to reunification where possible, and the state's interest in protecting and caring for a ward of the State. I cannot join the majority in its usurpation of the role of the legislature.

CHIEF JUSTICE McMORROW joins in this special concurrence.