NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210644-U

NOS. 4-21-0644, 4-21-0646 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 22, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
|        Petitioner-Appellee, | ) | No. 19JA28 |
|        v.    (No. 4-21-0644) | ) | |
| George S., | ) | |
|        Respondent-Appellant). | ) | |
| _____ | ) | |
| *In re* S.S., a Minor | ) | |
| | ) | No. 19JA29 |
| (The People of the State of Illinois, | ) | |
|        Petitioner-Appellee, | ) | |
|        v.    (No. 4-21-0646) | ) | Honorable |
| George S., | ) | John C. Wooleyhan, |
|        Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1 *Held*: The circuit court's finding respondent was unfit under section 1(D)(m)(ii) of
    the Adoption Act was not against the manifest weight of the evidence.

¶ 2    In August 2021, the State filed a motion for the termination of the parental rights

of respondent, George S., as to his minor children, K.S. (born in May 2010) and S.S. (born in

September 2013). On October 28, 2021, the Adams County circuit court held the fitness hearing,

and after finding respondent unfit as alleged in the termination motion, it held the best interests

hearing. At the best interests hearing, the court found it was in the minor children's best interests

to terminate respondent's parental rights.

¶ 3        Respondent appeals, asserting the circuit court erred by finding him unfit. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        The minor children's mother is Amy S., and she filed separate appeals from the circuit court judgment (Nos. 4-21-0645 and 4-21-0647). In April 2019, the State filed separate petitions for the adjudication of wardship of the minor children. The petitions alleged the minor children were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) because their environment was injurious to their welfare based on their parents' domestic violence. In March 2020, the State amended the facts of the petitions, but the petitions still alleged neglect based on an injurious environment. At a March 5, 2020, hearing, Amy admitted the minor children were neglected under section 2-3(1)(b) as alleged in the amended wardship petition. At a hearing the next day, respondent also admitted the minor children were neglected pursuant to section 2-3(1)(b) as alleged in the amended wardship petition. The circuit court accepted the admissions and adjudicated the minor children neglected. After a November 2020 hearing, the court entered a dispositional order finding respondent was unfit and unable to care for, protect, train, or discipline the minor children. The court made the minor children wards of the court and appointed the Department of Children and Family Services as the minor children's guardian and custodian.

¶ 6        In August 2021, the State filed a motion to terminate respondent's and Amy's parental rights to the minor children. As to respondent, the motion asserted respondent failed to make (1) reasonable efforts to correct the conditions that were the basis for the minor children's removal during any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(i) (West 2020)) and (2) reasonable progress toward the minor children's return during any

- 2 -

nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West 2020)). A separate document identified the relevant nine-month periods for the aforementioned allegations as March 6, 2020, to December 5, 2020, and December 5, 2020, to September 4, 2021.

¶ 7           On October 28, 2021, the circuit court first held the fitness hearing. The State presented the testimony of (1) Kelsey Platt, a supervisor at Chaddock Foster and Adoption Services, and (2) Sophie Borer, a case manager at Chaddock Foster and Adoption Services. It also presented respondent's conviction for domestic battery, a Class 4 felony (State's exhibit No. 1B). The date of the offense was June 19, 2019, and on March 2, 2020, respondent was sentenced to the Department of Corrections for 18 months. The State further presented the October 19, 2020, service plan (State's exhibit No. 2), which included an evaluation of the April 2020 service plan and the April 12, 2021, service plan (State's exhibit No. 3), which included an evaluation of the October 19, 2020, service plan. The State also presented Borer's contact notes for this case (State's exhibit No. 4). Only the testimony relevant to the issues on appeal is set forth below.

¶ 8           Platt testified she became the supervisor for this case in October 2020 and prepared the November 10, 2020, dispositional report. Before she became the supervisor, Lutheran Children and Family Services was responsible for the case. When she took over the case, respondent was in the Department of Corrections with a release date of November 24, 2020. Platt testified she sent respondent a letter when she took over the case. While he was incarcerated, respondent was not employed, did not complete any services, and received an unsatisfactory rating on the parenting task. Platt did not confirm whether the Department of Corrections could provide any of the services recommended for respondent. She was aware many of the programs offered to inmates had been on hold due to the COVID-19 pandemic.

Additionally, Platt did not have contact with respondent while he was incarcerated.

¶ 9        Borer testified she became involved in the case in November 2020. For the period of respondent's release from prison until February 2021, respondent was living with a friend and did not have a legal means of income. Respondent planned on filing for disability, which he eventually did. Further, respondent had not completed his mental health services during that period. Respondent did participate in a substance abuse evaluation and was recommended to participate in drug screens. Respondent did not complete a domestic violence assessment between his release and February 2021.

¶ 10        At the conclusion of the hearing, the circuit court found respondent unfit on all grounds asserted in the termination motion. The court also found Amy unfit.

¶ 11        The circuit court then proceeded to the best interests hearing. The State presented the testimony of Sophie Borer. Respondent did not present any evidence and did not make any argument as to the minor children's best interests.

¶ 12        At the conclusion of the hearing, the circuit court found the termination of respondent's parental rights was in the minor children's best interests. The court entered a written order terminating respondent's and Amy's rights to the minor children.

¶ 13        On November 3, 2021, respondent filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases also govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency cases). Thus, this court has jurisdiction of the appeal pursuant to Illinois Supreme Court Rule 307(a)(6) (eff. Nov. 1, 2017).

¶ 14                                II. ANALYSIS

¶ 15    Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2020)), the involuntary termination of parental rights involves a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). If the circuit court makes a finding of unfitness, then the State must prove by a preponderance of the evidence it is in the minor children's best interests that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004).

¶ 16    Since the circuit court has the best opportunity to observe the demeanor and conduct of the parties and witnesses, it is in the best position to determine the credibility and weight of the witnesses' testimony. *In re E.S.*, 324 Ill. App. 3d 661, 667, 756 N.E.2d 422, 427 (2001). Further, in matters involving minors, the circuit court receives broad discretion and great deference. *E.S.*, 324 Ill. App. 3d at 667, 756 N.E.2d at 427. Thus, a reviewing court will not disturb a circuit court's unfitness finding and best-interests determination unless they are contrary to the manifest weight of the evidence. See *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516-17 (2005) (fitness finding); *In re J.L.*, 236 Ill. 2d 329, 344, 924 N.E.2d 961, 970 (2010) (best-interests determination). A circuit court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Gwynne P.*, 215 Ill. 2d at 354, 830 N.E.2d at 517.

¶ 17                              A. Respondent's Fitness

¶ 18    Respondent contends the circuit court erred by finding him unfit. At the fitness hearing, the circuit court announced it found all four allegations of unfitness (two grounds for two different nine-month periods) were proven by more than clear and convincing evidence. As

noted by the State, respondent in his initial brief only addresses the court's findings he failed to make reasonable progress during the two alleged nine-month periods. In his reply brief, respondent contends his arguments for reasonable efforts and progress were combined.

¶ 19         We take this opportunity to point out "[r]easonable *efforts* and reasonable *progress* are two different grounds for finding a parent unfit in section 1(D)(m)." (Emphases in original.) *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1066, 859 N.E.2d 123, 137 (2006). The reasonable efforts ground relates to the goal of correcting the conditions that caused the removal of the minor children from the parent (750 ILCS 50/1(D)(m)(i) (West 2004)) and is judged by a subjective standard based upon the amount of effort reasonable for that particular person. *Daphnie E.*, 368 Ill. App. 3d at 1066-67, 859 N.E.2d at 137. On the other hand, the reasonable progress ground (750 ILCS 50/1(D)(m)(ii) (West 2004)) is judged by an objective standard based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. *Daphnie E.*, 368 Ill. App. 3d at 1067, 859 N.E.2d at 137. Regardless of respondent's initial brief, we will address the reasonable progress ground.

¶ 20         Section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)) provides a parent may be declared unfit if he or she fails "to make reasonable progress toward the return of the child[ren] to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act." Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007) (quoting *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001)). Moreover, they have explained reasonable progress as follows:

         " '[T]he benchmark for measuring a parent's "progress toward the

return of the child[ren]" under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child[ren], and in light of other conditions which later became known and which would prevent the court from returning custody of the child[ren] to the parent.' " *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844 (quoting *C.N.*, 196 Ill. 2d at 216-17, 752 N.E.2d at 1050).

Additionally, this court has explained reasonable progress exists when a circuit court "can conclude that *** the court, in the *near future*, will be able to order the child[ren] returned to parental custody. The court will be able to order the child[ren] returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child[ren]." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991). We have also emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227 (quoting *L.L.S.*, 218 Ill. App. 3d at 461, 577 N.E.2d at 1387).

¶ 21 In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant period. *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844 (citing *In re D.F.*, 208 Ill. 2d 223, 237-38, 802 N.E.2d 800, 809 (2003)). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844. In this case, the petition alleged two nine-month periods, but we will address the period of March 6, 2020, to December

5, 2020.

¶ 22        As to that period, the evidence showed respondent was in the Department of Corrections from the beginning of the period until November 24, 2020. Our supreme court has held time spent in prison does not toll the nine-month period mandated by section 1(D)(m). *J.L.*, 236 Ill. 2d at 341, 924 N.E.2d at 968. Respondent was unable to complete any services while incarcerated. While he questions State's exhibit No. 2 in his brief, respondent states the circuit court properly admitted the document into evidence. That exhibit showed, as of the October 19, 2020, evaluation, the caseworker at that time had not received any contact from respondent since his incarceration or any reports of contact between respondent and the minor children. The service plan included a mailing address for respondent to send cards or letters to the minor children. State's exhibit No. 2 further showed respondent received an unsatisfactory rating for maintaining contact and an overall unsatisfactory rating. Even considering programs for inmates were reduced due to the COVID-19 pandemic, respondent did not maintain contact with his caseworker and the minor children during his incarceration. Once he was released from prison, respondent did contact Borer and provide an address of where he was living with a friend. Borer had no safety concerns with that home. Respondent also sought visitation with the minor children, but none took place during the relevant nine-month period. Respondent did not seek employment and instead indicated he would file for disability. At the end of the first nine-month period, respondent had not completed any services, had not visited with the minor children or contacted them via mail, and did not have a legal means of income. As such, the circuit court was not at all close to being able to return the minor children to respondent.

¶ 23        Given the above evidence, the circuit court's finding respondent failed to make reasonable progress during the period of March 6, 2020, to December 5, 2020, was not against

the manifest weight of the evidence.

¶ 24 Since we have upheld the circuit court's determination respondent met the statutory definition of an "unfit person" based on respondent's failure to make reasonable progress (750 ILCS 50/1(D)(m)(ii) (West 2020)) during the nine-month period of March 6, 2020, to December 5, 2020, we do not address the other bases for the circuit court's unfitness finding. See *In re Tiffany M.*, 353 Ill. App. 3d 883, 891, 819 N.E.2d 813, 820 (2004).

¶ 25 B. Minor Children's Best Interests

¶ 26 While respondent lists as an issue for review whether the circuit court erred when it found terminating respondent's parental was in the minor children's best interests, he raises no contention of error in his brief. Thus, we do not address the circuit court's best interests finding.

¶ 27 III. CONCLUSION

¶ 28 For the reasons stated, we affirm the Adams County circuit court's judgment.

¶ 29 Affirmed.