NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210645-U

NOS. 4-21-0645, 4-21-0647 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 22, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | No. 19JA28 |
| v.    (No. 4-21-0645) | ) | |
| Amy S., | ) | |
| Respondent-Appellant). | ) | |
| _____ | ) | |
| *In re* S.S., a Minor | ) | |
| | ) | No. 19JA29 |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.    (No. 4-21-0647) | ) | Honorable |
| Amy S., | ) | John C. Wooleyhan, |
| Respondent-Appellant). | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's finding respondent was unfit under section 1(D)(m)(ii) of
the Adoption Act was not against the manifest weight of the evidence.

¶ 2    In August 2021, the State filed a motion for the termination of the parental rights

of respondent, Amy S., as to her minor children, K.S. (born in May 2010) and S.S. (born in

September 2013).  On October 28, 2021, the Adams County circuit court held the fitness hearing,

and after finding respondent unfit as alleged in the termination motion, it held the best interests

hearing.  At the best interests hearing, the court found it was in the minor children's best interests

to terminate respondent's parental rights.

¶ 3        Respondent appeals, asserting the circuit court erred by finding her unfit because (1) the evidence regarding reasonable progress during the second nine-month period was insufficient, (2) respondent's due process rights were violated because she received inadequate casework services during the first nine-month period, (3) the circuit court erred by admitting State's exhibit No. 2, and (4) the circuit court's finding regarding reasonable efforts was against the manifest weight of the evidence.  We affirm.

¶ 4                                I. BACKGROUND

¶ 5        The minor children's father is George S., and he filed separate appeals from the circuit court judgment (Nos. 4-21-0644 and 4-21-0646).  In April 2019, the State filed separate petitions for the adjudication of wardship of the minor children.  The petitions alleged the minor children were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) because their environment was injurious to their welfare based on their parents' domestic violence.  In March 2020, the State amended the facts of the petitions, but the petitions still alleged neglect based on an injurious environment due to domestic violence.  At a March 5, 2020, hearing, respondent admitted the minor children were neglected under section 2-3(1)(b) as alleged in the amended wardship petition.  At a hearing the next day, George also admitted the minor children were neglected pursuant to section 2-3(1)(b) as alleged in the amended wardship petition.  The circuit court accepted the admissions and adjudicated the minor children neglected.  After a November 2020 hearing, the court entered a dispositional order finding respondent was unfit to care for, protect, train, or discipline the minor children.  The court made the minor children wards of the court and appointed the Department of Children and Family Services as the minor children's guardian and custodian.

¶ 6        In August 2021, the State filed a motion to terminate respondent's and George's

parental rights to the minor children. As to respondent, the motion asserted respondent failed to make (1) reasonable efforts to correct the conditions that were the basis for the minor children's removal during any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(i) (West 2020)) and (2) reasonable progress toward the minor children's return during any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West 2020)). A separate document identified the relevant nine-month periods for the aforementioned allegations as March 6, 2020, to December 5, 2020, and December 5, 2020, to September 4, 2021.

¶ 7            On October 28, 2021, the circuit court first held the fitness hearing. The State presented the testimony of (1) Kelsey Platt, a supervisor at Chaddock Foster and Adoption Services, and (2) Sophie Borer, a case manager at Chaddock Foster and Adoption Services. It also presented documents showing respondent pleaded guilty to possession of methamphetamine, a Class 3 felony (State's exhibit No. 1A). The date of the offense was May 27, 2019, and on August 20, 2019, respondent was sentenced to 24 months' probation and no judgment was entered in the first offender drug case. Respondent's probation prohibited her from possessing and using any mind-altering drugs and required her to submit to random drug testing for the presence of, *inter alia*, cannabis. The State further presented the October 19, 2020, service plan (State's exhibit No. 2), which included an evaluation of the April 2020 service plan and the April 12, 2021, service plan (State's exhibit No. 3), which included an evaluation of the October 19, 2020, service plan. The State also presented Borer's contact notes for this case for the period of November 25, 2020, through July 15, 2021 (State's exhibit No. 4). Only the testimony relevant to the issues on appeal is set forth below.

¶ 8            Platt testified she became the supervisor for this case in October 2020 and prepared the November 10, 2020, dispositional report. Before she became the supervisor,

Lutheran Children and Family Services was responsible for the case. Her testimony only addressed the initial nine-month period.

¶ 9    Borer testified she became the caseworker in this case in November 2020. A new service plan began on April 13, 2021, and included an evaluation of the October 19, 2020, service plan. Respondent's tasks under the service plans were to engage in domestic violence services, mental health services, substance abuse services, a parenting course, visitation with her children, and to cooperate with Borer. Borer wrote the February 25, 2020, permanency review report. At that time, respondent was living with George's mother and thus lacked independent housing. Respondent was also unemployed and had only completed the first of two parts of a substance abuse assessment. Respondent tested positive for marijuana. Respondent had attended a couple of her therapy appointments and had done the intake for domestic violence therapy. She also appeared for one or two of the domestic violence counseling appointments.

¶ 10    Borer also wrote the June or July 2021 permanency hearing report. At that time, respondent and George had purchased and were living in a trailer that was not a safe living environment for the minor children. At the time of the fitness hearing, work still needed to be done on the trailer for it to be appropriate for the minor children. Borer explained the trailer still had exposed wires and outlets that were not fully in the wall. She had last been in the trailer in October 2021. By the June or July 2021 report, respondent had obtained employment at Wendy's. However, she was not engaged in mental health services. Respondent had "no call[ed], no show[ed] numerous appointments." In June 2021, respondent had been unsuccessfully discharged from mental health services. Respondent did complete some substance abuse services but continued to test positive for marijuana. Respondent did not engage in further domestic violence therapy and refused to sign releases for the domestic violence

- 4 -

therapy provider. Respondent did attend visits with the minor children and completed a parenting class. Since Borer received the case in November 2020, respondent had not made progress on her mental health and domestic violence tasks. Borer further testified respondent had not made progress on substance abuse. On cross-examination, Borer testified respondent had never tested positive for an illegal drug. She later testified she was not talking about the marijuana positives. Additionally, Borer testified respondent had not achieved unsupervised visits with the minor children due to her failure to complete domestic violence, substance abuse, and mental health services.

¶ 11        At the conclusion of the hearing, the circuit court found respondent unfit on all grounds asserted in the termination motion. The court also found George unfit.

¶ 12        The circuit court then proceeded to the best interests hearing. The State presented the testimony of Sophie Borer. Respondent did not present any evidence and did not make any argument as to the minor children's best interests.

¶ 13        At the end of the hearing, the circuit court found the termination of respondent's parental rights was in the minor children's best interests. The court entered a written order terminating respondent's and George's parental rights to the minor children.

¶ 14        On November 3, 2021, respondent filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases also govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency cases). Thus, this court has jurisdiction of the appeal pursuant to Illinois Supreme Court Rule 307(a)(6) (eff. Nov. 1, 2017).

¶ 15                                II. ANALYSIS

¶ 16　　　　　Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2020)), the involuntary termination of parental rights involves a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). If the circuit court makes a finding of unfitness, then the State must prove by a preponderance of the evidence it is in the minor children's best interests that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004).

¶ 17　　　　　Since the circuit court has the best opportunity to observe the demeanor and conduct of the parties and witnesses, it is in the best position to determine the credibility and weight of the witnesses' testimony. *In re E.S.*, 324 Ill. App. 3d 661, 667, 756 N.E.2d 422, 427 (2001). Further, in matters involving minors, the circuit court receives broad discretion and great deference. *E.S.*, 324 Ill. App. 3d at 667, 756 N.E.2d at 427. Thus, a reviewing court will not disturb a circuit court's unfitness finding unless they are contrary to the manifest weight of the evidence. See *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516-17 (2005) (fitness finding). A circuit court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Gwynne P.*, 215 Ill. 2d at 354, 830 N.E.2d at 517.

¶ 18　　　　　Respondent only challenges the unfitness finding. The circuit court found respondent unfit on four bases (two grounds for two different nine-month periods). One of the grounds was section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), which provides a parent may be declared unfit if he or she fails "to make reasonable progress toward the return of the child[ren] to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act." Illinois

courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007) (quotin*g In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001)). Moreover, they have explained reasonable progress as follows:

> " '[T]he benchmark for measuring a parent's "progress toward the return of the child[ren]" under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child[ren], and in light of other conditions which later became known and which would prevent the court from returning custody of the child[ren] to the parent.' " *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844 (quoting *C.N.*, 196 Ill. 2d at 216-17, 752 N.E.2d at 1050).

Additionally, this court has explained reasonable progress exists when a circuit court "can conclude that *** the court, in the *near future*, will be able to order the child[ren] returned to parental custody. The court will be able to order the child[ren] returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child[ren]." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991). We have also emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227 (quoting *L.L.S.*, 218 Ill. App. 3d at 461, 577 N.E.2d at 1387).

¶ 19    In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant period. *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at

844 (citing *In re D.F.*, 208 Ill. 2d 223, 237-38, 802 N.E.2d 800, 809 (2003)). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844. In this case, the petition alleged two nine-month periods, but we will address the period of December 5, 2020, to September 4, 2021.

¶ 20 Respondent asserts the State's evidence regarding this nine-month period only covered the first six to seven months and not the entire period. While the documentary evidence only covered until July 15, 2021, Borer's testimony covered the entire nine-month period. She first addressed the period up to her February 2021 permanency report and then the period up to her June or July 2021 report. Borer then testified as to what the parties still had not completed at the time of the November 2021 fitness hearing. She also specifically addressed the condition of respondent's home in October 2021. Such testimony implicitly addresses the period of July 2021 to September 4, 2021.

¶ 21 Borer clearly testified respondent did not have a home suitable for the minor children during the nine-month period. She further testified respondent had not completed her mental health, domestic violence, and substance abuse tasks. Respondent was still testing positive for marijuana during the nine-month period, and she was prohibited from possessing and using marijuana under the terms of her probation. She had also not completed the domestic violence task, which was the reason the minor children came into care. Respondent had also been unsuccessfully discharged from the mental health services. Additionally, respondent had yet to attain unsupervised visits with the minor children. The State's evidence shows respondent was not close to having the minor children returned to her during the second nine-month period.

- 8 -

¶ 22        Given the above evidence, the circuit court's finding respondent failed to make reasonable progress during the period of December 5, 2020, to September 4, 2021, was not against the manifest weight of the evidence.

¶ 23        Since we have upheld the circuit court's determination respondent met the statutory definition of an "unfit person" based on respondent's failure to make reasonable progress (750 ILCS 50/1(D)(m)(ii) (West 2020)) during the nine-month period of December 5, 2020, to September 4, 2021, we do not address the other three bases for the circuit court's unfitness finding and the arguments related to those bases.  See *In re Tiffany M.*, 353 Ill. App. 3d 883, 891, 819 N.E.2d 813, 820 (2004).

¶ 24                                III. CONCLUSION

¶ 25        For the reasons stated, we affirm the Adams County circuit court's judgment.

¶ 26        Affirmed.