NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220822-U

NO. 4-22-0822

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 11, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|     Petitioner-Appellee, | ) | No. 19JA308 |
| | ) | |
|         v. | ) | Honorable |
| George M., | ) | David A. Brown, |
|     Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's finding respondent was unfit under section 1(D)(m)(ii) of the Adoption Act was not against the manifest weight of the evidence.

¶ 2    In February 2022, the State petitioned to terminate the parental rights of respondent, George M., as to his minor child, L.M. (born September 26, 2016). In August 2022, the trial court granted the State's petition and terminated respondent's parental rights.

¶ 3    Respondent appeals, asserting the trial court erred by finding him unfit. We affirm.

¶ 4                  I. BACKGROUND

¶ 5    In November 2019, the State filed a petition for adjudication of wardship, alleging L.M., then age three, and who had been diagnosed with developmental delays, seizure disorders, and feeding problems, was neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987

(705 ILCS 405/2-3(1)(b) (West 2018)) in that L.M.'s environment was injurious to his welfare. The petition alleged L.M.'s mother medically neglected L.M. by failing to properly feed him as directed by physicians and therapists. The court placed temporary custody and guardianship of L.M. with the Department of Children and Family Services (DCFS).

¶ 6 Respondent stipulated to the petition. An April 2021 dispositional hearing report and addendum noted respondent had failed to complete various recommended services and missed random drug screens.

¶ 7 On April 15, 2021, the trial court conducted a combined adjudicatory and dispositional hearing. The trial court found both parents unfit and that it was in L.M.'s best interest he be made a ward of the court and placed in the custody and guardianship of DCFS.

¶ 8 On February 18, 2022, the State filed a petition for termination of parental rights, alleging in part respondent was unfit under section 1(D)(m)(ii) of the Adoption Act (Act) (750 ILCS 50/1(D)(m)(ii) (West 2020)) for failure to make reasonable progress toward the return of L.M. between May 16, 2021, and February 16, 2022. L.M.'s mother stipulated to the allegations of the petition and is not part of this appeal. Respondent filed an answer denying the allegations.

¶ 9 The trial court conducted a fitness hearing on June 8, 2022. Preliminarily, the parties stipulated to admitting respondent's certified mental health records and visitation records. The mental health records showed respondent was often unresponsive to calls from a service provider who sought to finish an assessment and obtain counseling for respondent. As set forth below, the State's witnesses testified about the events during the time period alleged in the petition. Their testimony was consistent with various reports appearing in the record.

¶ 10 Shawn Miller, the caseworker assigned to the case, testified that, following the April 15, 2021, adjudication, respondent was to complete the following services: (1) a

psychological evaluation, (2) a substance abuse assessment, (3) parenting classes, (4) counseling, (5) domestic violence classes, and (6) monthly random drug drops. On service plans in place between May 16, 2021, and February 16, 2022, respondent overall rated unsatisfactory. However, some portions were rated satisfactory, as he did complete some of the services required.

¶ 11　　　　　In late May 2021, respondent failed to set up a time to meet with Miller to discuss services. In July 2021, respondent moved out of his home in Bartonville, Illinois, to live with his mother in Pekin. Miller testified the home in Pekin was not appropriate for a child with L.M.'s complex needs. Miller met with respondent at the Pekin home and described it as dirty and with "things piled all over the place." Miller discussed counseling services with respondent at every visit, but respondent did not complete a mental health assessment until August 2021. The assessment recommended individual counseling, but respondent declined services because he felt he did not need counseling. Miller also discussed with respondent the importance of domestic violence counseling. Respondent asked Miller how to sign up for those services, and Miller told him on at least four occasions how to enroll, but he never did so.

¶ 12　　　　　In September 2021, respondent's mother obtained an emergency order of protection against respondent, and he moved to a friend's home until the end of October 2021. Respondent then moved in with his father in South Pekin. Miller did not observe the condition of either of those residences.

¶ 13　　　　　On February 9, 2022, Miller contacted respondent about counseling. Respondent told Miller he did not need counseling because his problems had been resolved. Respondent completed six of the nine monthly drug screens scheduled during the relevant period.

¶ 14 Miller opined that, even though respondent completed parenting classes, he was not able to demonstrate all necessary parenting skills. Miller explained that some skills required respondent to be in person with the minor, which did not occur because of concerns about bedbugs at respondent's mother's home. Respondent eventually obtained a psychological assessment and a parenting capacity assessment outside of the relevant time frame for evaluating respondent's progress. The record indicates that a backlog created by the COVID-19 pandemic affected the availability of services. The court asked Miller if respondent ever asked how L.M. was doing. Miller stated respondent would ask maybe once every two or three months, but he did not show a true interest on a consistent basis.

¶ 15 Anisha Hughes, the supervisor of visitation, supervised virtual visits between respondent and L.M. She testified respondent's virtual visits with L.M. each lasted an hour and were "repetitive." She explained respondent asked the same questions of L.M. about colors, animals, numbers, and what he was eating. Respondent was sometimes silent between the questions. Respondent did not ask Hughes how L.M. was doing outside of the visits.

¶ 16 Sarah S., L.M.'s foster parent, also testified about the virtual visits being repetitive. Sarah S. testified respondent never asked how L.M. was doing outside of the visits. The court inquired whether L.M. was able to interact in a meaningful fashion other than just answering questions. Sarah S. responded "yes," and stated as examples that L.M. likes to sing songs or listen to books being read to him.

¶ 17 The State argued respondent had minimal contact with the caseworker, failed to complete critical services, failed to address "[t]he bedbug situation," and showed minimal interest in L.M. The State further argued respondent continued to claim he did not need counseling, even though the mental health assessment stated otherwise. Respondent's counsel

argued it was noteworthy that respondent completed the psychological assessment for parenting capacity, albeit after the relevant period. Respondent's counsel also argued it was impossible to gauge respondent's reasonable progress without that assessment.

¶ 18      The guardian *ad litem* agreed with the State, further noting respondent was an intelligent, educated person who worked as an IT technician for the Peoria Park District and studied Latin in school. Thus, the guardian *ad litem* stated respondent was intelligent enough to know he needed to complete the services, yet he refused counseling. The guardian *ad litem* further mentioned respondent's lack of concern for how L.M. was doing or developing.

¶ 19      The trial court found respondent failed to make reasonable progress. The court noted respondent failed to complete required tasks, including seeking counseling. The court cited issues with respondent's virtual visitation sessions and noted that respondent's failure to address the "bedbug concern" prevented in-person visitation. The court found there was no demonstrable movement toward returning L.M. home, and instead the movement was away from that goal. Accordingly, the trial court found respondent unfit and scheduled a best-interest hearing on August 30, 2022.

¶ 20      At the best-interest hearing, the trial court found it in the best interest of L.M. to terminate both parents' parental rights. This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22      Respondent argues the trial court's finding he was unfit was against the manifest weight of the evidence. He does not argue the trial court erred in its best-interest determination.

¶ 23      Involuntary termination of parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq*. (West 2020)) is a two-step process. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 67. The State must first prove by clear and convincing evidence that the parent is unfit

under any single ground listed in section 1(D) of the Act (750 ILCS 50/1(D) (West 2020)). *J.H.*, 2020 IL App (4th) 200150, ¶ 67.

¶ 24 We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 25 Grounds for unfitness include the failure of a parent "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under section 2-3 of the Juvenile Court Act of 1987 [(705 ILCS 405/2-3 (West 2020))]." 750 ILCS 50/1(D)(m)(ii) (West 2020). "Our supreme court has interpreted section 1(D)(m)(ii) as requiring a parent to make demonstrable movement toward the goal of reunification." *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 68 (citing *In re C.N.*, 196 Ill. 2d 181, 211 (2001)). This court has further explained "reasonable progress" as follows:

" 'Reasonable progress' is an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the

parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 26 In determining a parent's unfitness based on a lack of reasonable progress, the court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007) (citing *In re D.F.*, 208 Ill. 2d 223, 237-38 (2003)). Courts are limited to the period alleged in the motion to terminate parental rights "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Reiny S.*, 374 Ill. App. 3d at 1046. The motion to terminate parental rights in this case alleged respondent failed to make reasonable progress in the nine-month period between May 16, 2021, and February 16, 2022.

¶ 27 Here, the trial court's finding respondent failed to make reasonable progress toward reunification with L.M. was not against the manifest weight of the evidence. Although respondent points to progress he made regarding completing some of the required services, the record shows respondent failed to complete key tasks. The record reflects there was an accusation of domestic violence, yet respondent did not complete any domestic violence classes. As the trial court noted, respondent also failed to complete counseling and a timely psychological assessment. The record shows respondent was not proactive in obtaining services. There was evidence that respondent's behavior during virtual visitations was repetitive, and respondent did not inquire as to L.M.'s well-being outside of visitation. Further, respondent never addressed the unsanitary conditions or "bedbug concern" that prevented important in-person visitation. As the guardian *ad litem* noted, respondent is an intelligent person capable of doing what needed to be done, yet he failed to do so. Thus, the record reasonably showed a

lack of reasonable progress and, as the trial court noted, showed respondent was moving away from reunification instead of toward it. Accordingly, the State provided sufficient evidence for the trial court to find by clear and convincing evidence respondent unfit for failing to make reasonable progress toward L.M.'s return during the nine-month period between May 16, 2021, and February 16, 2022. Thus, the trial court's unfitness finding was not against the manifest weight of the evidence.

¶ 28                              III. CONCLUSION

¶ 29          For the reasons stated, we affirm the Tazewell County trial court's judgment.

¶ 30          Affirmed.